# EXHIBIT 1

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 21 2004

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION
OCTOBER 21, 2004 SESSION

| UNITED STATES OF AMERICA | ) | ~~SEALED~~ Criminal No. 6:04CR00016 |
| --- | --- | --- |
| v. | ) | |
| D. J. COOPER | ) ) ) | In violation of Title 33, U.S.C. §§ 1311(a) and 1319(c)(2)(A) |

# INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

1. **D. J. COOPER** ("COOPER") owned and operated since at least 1967 the Hardy Road Trailer Park in Bedford County, Virginia.

2. **COOPER**'s trailer park grew to include more than a hundred mobile home sites. **COOPER** rented sites to tenants who either owned their own mobile home or rented one from a third party. Sewage from tenants occupying 22 of these sites was discharged to a sewage lagoon that **COOPER** had constructed in 1966-67. Sewage from the tenants in the rest of the trailer sites discharged to septic fields. **COOPER** received approximately $5000 per month in rental income from the tenants occupying the 22 sites discharging to the sewage lagoon.

3. **COOPER**'s sewage lagoon had a treatment capability limited to primary treatment plus chlorination -- that is, solid material would settle and separate from the liquid portion of the sewage. The liquid sewage would then flow through a chlorine contact chamber, where it should have been exposed to dissolved granulated chlorine. The discharge from the lagoon then flowed into Sandy Creek. The lagoon had no dechlorination capability.

4. **COOPER**'s sewage lagoon had a design capacity of 6300 gallons per day and normally discharged at a rate of between 3000 and 4000 gallons per day into Sandy Creek, which flowed into Falling Creek, which in turn flowed to the Roanoke River upstream from Smith Mountain Lake.

5. In 1979, after more than ten years of Health Department citations for discharging sewage that had not been properly disinfected, and multiple complaints from **COOPER**'s neighbors about the discharges, the Bedford County Health Department sought assistance from the State Water Control Board ("the Water Board"). County Health officials informed the Water Board that **COOPER** had repeatedly disregarded their recommendations regarding proper sewage treatment. The Water Board met with **D. J. COOPER** and his attorney regarding the lagoon's continuing pollution, and advised County Health officials to initiate available legal remedies if **COOPER** continued to be uncooperative.

6. The following year, Bedford County Health Authorities sought the Commonwealth Attorney's assistance in dealing with **COOPER**. In March 1980, the

Bedford County Commonwealth Attorney advised **COOPER** by letter that he would initiate a criminal prosecution unless **COOPER** took immediate efforts to comply with State law. The Commonwealth Attorney also warned **COOPER** against repeating what he called **COOPER's** historical pattern of temporary efforts to comply with the law, followed by a return to non-compliance.

### COOPER's Clean Water Act Permit

7. The Federal Water Pollution Control Act, 33 U.S.C. Section 1251, et seq., more commonly known as the Clean Water Act, was enacted by Congress in 1972 to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act prohibited the discharge of pollutants, including treated sewage, into waters of the United States, such as Sandy Creek, except when in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued by the United States Environmental Protection Agency or an authorized state such as the Commonwealth of Virginia.

8. Until 2002, discharges from **COOPER's** sewage lagoon were regulated by a series of Clean Water Act permits. D. J. **COOPER** was originally issued a Virginia Pollutant Discharge Elimination System ("VPDES") Permit in 1992 for the sewage lagoon.

9. **COOPER's** most recent permit was VPDES Permit No. VA0087165, issued in 1997 by the Commonwealth of Virginia's Department of Environmental Quality ("DEQ"). The permit established numerical discharge limits for various types

3

of pollution – such as suspended solids, nitrogen, and biochemical oxygen demand – in order to protect water quality and human health. The permit also required **COOPER** to determine whether the sewage lagoon was operating in compliance with those discharge limits, by (1) regularly collecting and analyzing samples of his sewage lagoon's discharge; and (2) submitting the results of that analysis to DEQ in a monthly discharge monitoring report. .

## COOPER's Permit Violations and DEQ's 1998 Order

10. Between 1995 and 1998, DEQ issued **D. J. COOPER** sixteen (16) separate Notices of Violation ("NOVs") for violating his permit. In 1998, DEQ initiated a civil enforcement action against **COOPER**. **COOPER** subsequently signed a "Consent Special Order" on October 13, 1998 ("the 1998 Order") in which he admitted committing dozens of permit violations between 1993 and 1998. In 52 of those 60 months (that is, 87% of the time) **COOPER** had violated one or more of his permit limitations.

11. The 1998 Order fined **COOPER** $5,000, but suspended $4,000 of that amount on the condition that he comply with provisions that were intended to halt further illegal pollution from the sewage lagoon. The 1998 Order gave **COOPER** two years (until August 1, 2000) to choose among the following options:

(1) upgrade his sewage lagoon by adding aeration and a recirculating sand filter;

(2) decommission his lagoon and replace it with a "package plant" (a small, pre-fabricated sewage treatment system);  (3) decommission his lagoon and replace

4

it with a system of septic tanks; or (4) decommission his lagoon and remove the 22 trailers it served. The 1998 Order also gave **COOPER** an additional two years -- until August 1, 2002 -- to implement whichever course of action he selected.

12. From November 1998 through August 2000, DEQ cited **COOPER** for 274 additional violations of his permit. DEQ sent **COOPER** numerous NOVs and Letters of Noncompliance regarding these violations, but most were returned unclaimed.

## COOPER's Violation of the 1998 Order

13. **D. J. COOPER** violated the 1998 Order, by failing to meet its August 1, 2000, deadline for choosing a course of action that would either upgrade or shut down his sewage lagoon.

14. On August 7, 2000, a DEQ scientist conducted a "benthic survey" (that is, a study of underwater animal life) downstream from the discharge point of **COOPER's** sewage lagoon. The stream below **COOPER's** lagoon was discolored and gave off a sewage odor. In contrast with a "control site" which contained numerous benthic species, there were only a few species downstream from **COOPER's** sewage lagoon, and those were primarily species known to be tolerant of pollutants.

15. Between September 2000 and April 2001, DEQ cited **COOPER** for an additional 107 violations of his permit.

### DEQ's 2001 Order

16. In late 2001, DEQ sought a revision of the 1998 Order. With **D. J. COOPER**'s consent, the State Water Quality Board issued a December 13, 2001, Order that required **COOPER** to pay a $2,000 fine, established less stringent discharge limitations than those contained in his permit, and extended the deadline by which **COOPER** had to decide whether to upgrade or close down his sewage lagoon. Under this 2001 Order, **COOPER** had until January 15, 2002, to choose from among the four alternative courses of action set out in the earlier 1998 Order. The 2001 Order maintained the August 1, 2002, deadline for **COOPER** to complete the upgrade or shut-down of his sewage lagoon.

17. In January 2002, **COOPER** informed DEQ by letter that he would replace his sewage lagoon with a mass drain field, and would purchase additional land on which to locate that drain field.

### The Expiration of COOPER's Clean Water Act Permit

18. On March 7, 2002, the Clean Water Act permit authorizing **COOPER** to discharge into Sandy Creek expired. **COOPER** did not complete an application for a new permit. After this point, **COOPER**'s discharges were authorized only by the terms of the 2001 Order.

19. **COOPER** failed to provide DEQ with discharge monitoring reports for the April, May, and June 2002 discharges from his sewage lagoon.

## COOPER's Violation of the 2001 Order

20.  D. J. COOPER violated the 2001 Order by failing to meet its August 1, 2002, deadline for either upgrading or shutting down his sewage lagoon.

21.  On August 15, 2002, a DEQ inspector went to COOPER's sewage lagoon and found it still in operation and discharging. There was noticeable algae growth at the point where the lagoon discharged to the creek. This algae growth indicated that high levels of nutrients from human waste were entering the creek, which threatened to decrease the stream's necessary oxygen levels.

22.  On October 2, 2002, two DEQ scientists performed another benthic survey downstream from the discharge point of COOPER's sewage lagoon. Although the temperature, pH, and dissolved oxygen of the stream were within the normal range, the stream was essentially devoid of life.

## The Cancellation of the 2001 Order and COOPER's Continuing Illegal Discharges

23.  On October 3, 2002, the State Water Control Board canceled the 2001 Order, due to D. J. COOPER's failure to comply with the provisions of the Order. As a result, COOPER was no longer authorized to discharge any pollutants into waters of the Commonwealth.

24.  On November 6, 2002, a DEQ inspector examined COOPER's sewage lagoon. The facility was not sufficiently chlorinating its discharging sewage, which was greenish in color and flowing at a rate of 3-4 gallons per minute. The inspector

issued a report, which was sent to COOPER, stating that all discharge from the lagoon must cease immediately and that COOPER must pump and haul the lagoon's contents to an approved disposal facility in order to prevent further illegal discharges.

25. The DEQ inspector returned to COOPER's sewage lagoon on November 14, 2002. The lagoon was continuing to discharge sewage to Sandy Creek with non-detectable levels of the disinfectant chlorine, that is, insufficient chlorine to provide necessary disinfection. DEQ subsequently issued COOPER an NOV, and stated again that all discharge must cease and the contents must be pumped and hauled away.

### DEQ's 2003 Unilateral Order

26. On May 21, 2003, DEQ held a fact-finding hearing in preparation for issuing D. J. COOPER a Unilateral Administrative Order. COOPER was present and heard testimony from a DEQ scientist regarding the results of the two benthic studies described above, which had revealed his sewage lagoon's negative impact on the water quality of Sandy Creek. COOPER also heard testimony from the DEQ inspector who had inspected the lagoon during the previous 6 months regarding the elevated levels of fecal coliform bacteria found in the discharge.

27. On July 24, 2003, the Commonwealth of Virginia's State Water Quality Board issued D. J. COOPER a Unilateral Order imposing a $10,000 fine and directing him to cease discharging until he obtained a permit and could comply with its provisions.

8

28. **D. J. COOPER** has not complied with the July 2003 Unilateral Order. In the fifteen (15) months from August 2003 to October 2004, **D. J. COOPER** continued to operate the lagoon and discharge pollutants to Sandy Creek in violation of the 2003 Unilateral Order.

## COUNT ONE

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about August 5, 2003, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT TWO

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about September 15, 2003, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT THREE

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about October 15, 2003, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT FOUR

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about October 29, 2003, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 389 colonies per hundred milliliters of e coli bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT FIVE

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about December 3, 2003, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 900 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT SIX

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about January 12, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing more than 1600 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT SEVEN

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about February 9, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing more than 1600 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT EIGHT

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about May 18, 2004, in the Western District of Virginia, the defendant, D. J. COOPER did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 1600 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT NINE

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about June 21, 2004, in the Western District of Virginia, the defendant, D. J. COOPER did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 500 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT TEN

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about July 6, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 1600 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT ELEVEN

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about August 9, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 1600 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT TWELVE

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about September 13, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing 240 colonies per hundred milliliters of fecal coliform bacteria into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

## COUNT THIRTEEN

1. Paragraphs 1 through 28 of the Introduction are realleged and incorporated herein by reference.

2. On or about October 5, 2004, in the Western District of Virginia, the defendant, **D. J. COOPER** did knowingly discharge pollutants from a point source into waters of the United States without a permit, that is, by continuing to operate his sewage lagoon so that it discharged sewage containing green tinted sewage with an odor into Sandy Creek.

3. All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2)(A).

A **TRUE BILL**, this 21st day of October, 2004.

_____
FOREMAN

_____
UNITED STATES ATTORNEY

16